## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

JIVON BROWN,

    Petitioner,

    v.

RONALD WEBER, WARDEN, and
ATTORNEY GENERAL OF MARYLAND

    Respondents.

Civil Action No.:  ELH-22-1894

### MEMORANDUM OPINION

Jivon Brown, Petitioner, a Maryland State prisoner, has filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254.  ECF 1 (the "Petition").  Respondents, Warden Ronald Weber and the Maryland Attorney General, filed an answer to the Petition, asserting that the claims are either procedurally defaulted, non-cognizable, or lack merit. ECF 12.  They also submitted several exhibits, including the "State Record" and several transcripts.  The exhibits total over 1900 pages.  Brown replied.  ECF 13; ECF 15.

No hearing is necessary to resolve the matter.  *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2023); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. § 2254(e)(2)).  For the reasons that follow, I shall deny the Petition.  And, a certificate of appealability shall not issue.

### I.  Background

On July 31, 2017, Brown was indicted in the Circuit Court for Baltimore City and charged with first degree murder; second degree murder; voluntary manslaughter; use of a firearm in a

crime of violence; attempted first degree murder; attempted second degree murder; first degree assault; reckless endangerment; and unlawful possession of a firearm. ECF 12-1 at 6-8, 27. From July 23-30, 2018, Brown was tried by a jury and convicted of voluntary manslaughter, use of a firearm in a crime of violence, first degree assault, reckless endangerment, and unlawful possession of a firearm. ECF 12-7 at 8-9.

In presenting a summary of the evidence adduced at trial, I shall rely on the factual recitation set forth by the Maryland Court of Special Appeals ("CSA"), now known as the Appellate Court of Maryland,[1] in an unreported opinion issued on January 30, 2020. *Brown v. State*, No. 2467, Sept. Term 2018, 2020 WL 496868, at *1 (Md. Ct. Spec. App. Jan. 30, 2020):

> The shooting death of the victim, Darryl Owens, was precipitated by the events that unfolded on July 5, 2017 when Marie Stringfellow, the mother of C.B., went to [Brown's] home to get C.B. from visitation with her father, [Brown]. Stringfellow and [Brown] were engaged in an on-going custody dispute. Because of this, Stringfellow was accompanied by two of her cousins, Kelsey and Kiera Lewis, Kiera's then-boyfriend, Darryl Owens, and Marie Stringfellow's brother, Delvon Stringfellow. A number of people were in [Brown's] residence, including [Brown], C.B., [Brown's] girlfriend Kendra Jones, [Brown's] brother Daytwan Maddox, and several children.
>
> While the evidence adduced at trial offered a conflicting account of exactly what transpired, it is enough to say that a fight broke out after Marie Stringfellow and her group arrived at [Brown's] residence. At some point during the fight, Kiera Lewis picked up C.B. and walked out of [Brown's] residence with Daryl Owens. Moments later, after [Brown] retrieved a purple and white pistol from his bedroom, [Brown] shot Daryl Owens four or five times killing him in front of [Brown's]

---

[1] In the general election held in Maryland in November 2022, the voters of Maryland approved a constitutional amendment to change the name of the Maryland Court of Appeals to the Supreme Court of Maryland. And, the voters also approved changing the name of the Maryland Court of Special Appeals to the Appellate Court of Maryland. These changes went into effect on December 14, 2022. *See* Press Release, Maryland Courts, *Voter-approved constitutional change renames high courts to Supreme and Appellate Court of Maryland* (Dec. 14, 2022), https://perma.cc/TL89-QFKR. However, I shall refer to the courts by the names that were in effect when any cited decisions were issued.

residence. [Brown] did not deny shooting Daryl Owens, rather, he claimed he did so in self-defense and defense of others. He told the police that Daryl Owens brandished a pistol during the fight and he was in fear of his life and the lives of the others present at the scene. No firearms were admitted into evidence.

Sentencing was held on August 29, 2018.   The circuit court sentenced Brown to an aggregate term of forty years' imprisonment. ECF 12-8 at 49.

Brown appealed his conviction to the CSA. ECF 12-1 at 34-74. He asserted two grounds, as follows, *id.* at 35-36 (most capitalization omitted): "The trial court's refusal to give the defense-requested jury instruction on the defense of necessity requires the reversal of [Brown's] convictions," and "The evidence is insufficient to sustain [Brown's] conviction for reckless endangerment." *Id.* at 35 (capitalization omitted).  On January 30, 2020, in an unreported opinion, the CSA affirmed the convictions. *Id.* at 100-109. Thereafter, the Maryland Court of Appeals denied Brown's petition for a writ of certiorari. *Id.* at 110-113.

Through counsel, Brown filed a petition for post-conviction relief in the Circuit Court for Baltimore City on May 28, 2021. *Id.* at 114-193. He claimed that his trial counsel, Jason Silverstein, rendered ineffective assistance of counsel by failing to: (1) request a jury instruction on the castle doctrine (*id*. at 115); (2) object to the State's comments on a duty to retreat (*id*.); (3) object to the sentence for reckless endangerment (*id.* at 116); (4) object to the reckless endangerment instruction (*id*.); (5) object to the State's claim that Mr. Faulkner was "high" (*id*.); (6) subpoena Delvon Stringfellow (*id*); (7) call Kelsey Lewis about Mr. Owens's gun (*id*. at 117); (8) object to amending the indictment and the cumulative effect of the deficient performance, as noted.

Following a hearing on Brown's post-conviction petition (ECF 12-9) on August 10, 2021, the circuit court denied the petition. ECF 12-1 at 194-227. Thereafter, Brown filed an application for leave to appeal (*id.* at 228-252), but it was summarily denied by the CSA.  *Id.* at 253-254.[2]

Brown filed his federal Petition on August 1, 2022 (ECF 1) and his Reply on December 8, 2022. ECF 13. He asserts two grounds for relief in his Petition and a third ground in his Reply[3], as follows:[4] (1) trial counsel was ineffective for failing to request a jury instruction on the castle doctrine (ECF 1 at 5), (2) trial counsel was ineffective for failing to object to the state amending the indictment at the beginning of trial (*id.*), and (3) trial counsel was ineffective for failing to object to the jury instruction on reckless endangerment. ECF 13 at 16. Respondents argue that the Petition should be dismissed because Ground One lacks merit (ECF 12 at 33-58) and Ground Two is non-cognizable in federal habeas review and procedurally defaulted. *Id.* at 58-66.

## II.    Standard of Review

The Petition seeks habeas corpus relief pursuant to 28 U.S.C. § 2254.  In accordance with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court has the

---

[2] In his post-conviction petition, Brown also challenged the legality of his sentence, arguing he should not have received consecutive sentences for the counts of voluntary manslaughter and reckless endangerment. ECF 12-1 at 117. Brown separately appealed the denial of this claim to the CSA (*id.* at 255-272), which issued an opinion on August 3, 2022, affirming the circuit court. *Id.* at 307-309. Certiorari was denied. *Id.* at 310.

[3] The ordinary rule in federal court is that "new arguments cannot be raised in a reply brief before the district court." *De Simone v. VSL Pharms., Inc.*, 36 F.4th 518, 531 (4th Cir. 2022) (citation and internal quotation marks omitted). Nevertheless, "a district court may consider an argument raised for the first time on reply under appropriate circumstances." *Id.* Because the Court construes a pro se petition liberally, the Court will consider Ground Three. *See Erickson v. Pardus,* 551 U.S. 89 (2007).

[4] For clarity and brevity, the claims have been rephrased. To the extent the nature of the claim was unclear, the Court construed the claim to be consistent with the similar one raised in Brown's post-conviction petition.

power to grant a petition for a writ of habeas corpus "only on the ground that [the prisoner] is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); *see Shoop v. Twyford*, 596 U.S. 811, 818 (2022); *Wilson v. Corcoran*, 562 U.S. 1 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

In *Shoop*, the Supreme Court explained, 596 U.S. at 818 (internal parallel citations omitted):  "Congress enacted AEDPA 'to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases,' *Woodford v. Garceau*, 538 U.S. 202, 206 (2003), and to advance 'the principles of comity, finality, and federalism,' *Williams v. Taylor*, 529 U.S. 420, 436 (2000) (*Michael Williams*). It furthered those goals 'in large measure [by] revising the standards used for evaluating the merits of a habeas application.' *Garceau*, 538 U.S. at 206."

Notably, "it is not the province of a federal habeas court to reexamine state court determinations on state law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Larry v. Branker*, 552 F.3d 356, 368 (4th Cir. 2009).  Indeed, "Federal courts owe state tribunals 'significant deference' with respect to 'their determination that a state prisoner isn't entitled to habeas relief.'" *Crockett v. Clarke*, 35 F.4th 231, 241 (4th Cir. 2022) (citation omitted); *see Nicolas v. Att'y Gen. of Maryland*, 820 F.3d 124, 129 (4th Cir. 2016) (stating that a federal court "reviewing a habeas petition that has already been adjudicated on the merits in state court [must] give considerable deference to the state court decision.").

If a state prisoner's claim has already been adjudicated on the merits, § 2254 restricts federal habeas relief to limited circumstances.  In *Shoop*, the Supreme Court explained, 596 U.S. at 818-19 (internal parallel citations omitted):

Pertinent here, § 2254(d) provides that if a claim was adjudicated on the merits in state court, a federal court cannot grant relief unless the state court (1) contradicted

or unreasonably applied this Court's precedents, or (2) handed down a decision "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." The question under AEDPA is thus not whether a federal court believes the state court's determination was incorrect, but whether that determination was unreasonable—"a substantially higher threshold" for a prisoner to meet. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *see also Harrington v. Richter*, 562 U.S. 86, 102–103 (2011).

AEDPA also limits the ability of a federal habeas court "to develop and consider new evidence." *Shoop*, 596 U.S. at 819. The *Shoop* Court said, *id.* (internal parallel citation omitted): "Review of factual determinations under § 2254(d)(2) is expressly limited to 'the evidence presented in the State court proceeding.' And in *Cullen v. Pinholster*, 563 U.S. 170 (2011), we explained that review of legal claims under § 2254(d)(1) is also 'limited to the record that was before the state court.' *Id.,* at 181." As the Court put it, 596 U.S. at 819: "This ensures that the 'state trial on the merits' is the 'main event, so to speak, rather than a tryout on the road for what will later be the determinative federal habeas hearing.'" *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977) (internal quotation marks and parallel citation omitted).

Under 28 U.S.C. § 2254(d)(1), the prisoner must show that the state court's determination "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see Wills v. Pszczolkowski*, 125 F.4th 534, 538 (4th Cir. 2025). And, under § 2254(d)(2), the writ may be granted if a decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See Wills*, 125 F.4th at 538. Therefore, a federal court is precluded from granting habeas corpus relief "'on a claim decided on the merits in a state court unless it determines the state court's decision was contrary to, or involved an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts in light of the record evidence.'" *Crockett*, 35 F. 4th at

235; *see Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 364–65 (2000); *see* 28 U.S.C. § 2254(d)(1). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the [petitioner's] case." *Id.* at 407.

For purposes of § 2254(d)(1), "clearly established Federal law" refers only to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (cleaned up). As to "unreasonable application," the Supreme Court explained in *Williams (Terry)*, 529 U.S. at 407 (O'Connor, J., delivering the majority opinion with respect to Part II):

> [A] state-court decision can involve an "unreasonable application" of [the Supreme] Court's clearly established precedent in two ways. First, a state-court decision involves an unreasonable application ... if the state court identifies the correct governing legal rule ... but unreasonably applies it to the facts of the particular state prisoner's case. Second ... if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

> I discuss these concepts in more detail, *infra*.

A § 2254 petition must also set forth specific grounds for relief. *Samples v. Ballard*, 860 F.3d 266, 273 (4th Cir. 2017); *see Folkes v. Nelsen*, 34 F.4th 258, 267 (4th Cir. 2022). Claims by a state prisoner that he is in custody in violation of the Constitution or the laws of the United States "implicate concerns about federalism and comity[."] *Crockett*, 35 F.4th at 241. And, concerns regarding comity and federalism "reach their apex" when a state court has previously ruled on an

alleged wrongful conviction. *Valentino v. Clarke*, 972 F.3d 560, 575 (4th Cir. 2020). Therefore, "the standard for such claims is exceedingly high." *Crockett*, 35 F.4th at 241; *see Burt v. Titlow*, 571 U.S. 12, 19 (2013).

Of import, "[t]he State possesses primary authority for defining and enforcing the criminal law, and for adjudicating constitutional challenges to State convictions." *Shinn v. Ramirez*, 596 U.S. 366, 376 (2022) (internal quotation marks and citations omitted). "The role of a federal habeas court is to guard against extreme malfunctions in the state criminal justice systems, not to apply *de novo* review of factual findings and to substitute its own opinions for the determinations made on the scene by the trial judge." *Davis v. Ayala*, 576 U.S. 257, 276 (2015) (internal quotation marks and citations omitted). Therefore, § 2254 "is not to be used as a second criminal trial, and federal courts are not to run roughshod over the considered findings and judgments of the state courts that conducted the original trial and heard the initial appeals." *Williams (Terry)*, 529 U.S. at 383; *see Walters v. Martin*, 18 F.4th 434, 441 (4th Cir. 2021).

The Fourth Circuit has characterized the habeas standard as "an extraordinary standard of review." *Crockett*, 35 F.4th at 235. Accordingly, the habeas court may not disturb a state court judgment "absent an error that lies "'beyond any possibility for fair-minded disagreement.'"" *Mays v. Hines*, 592 U.S. 385, 386 (2021) (per curiam) (citations omitted); *see Walters*, 18 F.4th at 441.

In assessing a petitioner's habeas claims, the district court looks to the opinion of "'the last reasoned decision of a state court addressing the claim.'" *Allen v. Stephan*, 42 F.4th 223, 247 (4th Cir. 2022) (quoting *Woodfolk v. Maynard*, 857 F.3d 531, 544 (4th Cir. 2017)), *cert. denied sub nom. Chestnut v. Allen*, 143 S. Ct. 2517 (2023). And, the federal court's review of a state court decision under § 2254 is conducted "through a narrow lens . . . ." *Mahadi v. Stirling*, 20 F.4th 846,

854 (4th Cir. 2021). It requires a review of "the record in its entirety," as it existed before the last

state court to consider the matter. *Id.*; *see Mays*, 592 U.S. at 392; *Hyman v. Hoekstra*, 41 F.4th

272, 274 (4th Cir. 2022).

To obtain relief, the petitioner must identify the "clearly established" legal principle on

which he relies. As noted, to qualify as "clearly established" a principle must originate from an

actual Supreme Court holding, not from its passing dicta. *See Woodall*, 572 U.S. at 419. And, the

holding must be described with specificity. *See Brown v. Davenport*, 596 U.S. 118 (2022). A

holding at a "high level of generality" will not suffice. *Lopez v. Smith*, 574 U.S. 1, 6–8 (2014) (per

curiam) (citation omitted); *see Metrish v. Lancaster,* 569 U.S. 351, 367–68 (2013). Moreover,

circuit precedent cannot turn "'a general principle of Supreme Court jurisprudence into a specific

legal rule'" that has not been "announced" by the Supreme Court. *Lopez*, 574 U.S. at 7 (quoting

*Marshall v. Rodgers*, 569 U.S. 58, 64 (2013)).

For a state court's decision to be contrary to established federal law, the state court must

have arrived at a conclusion opposite to that reached by the Supreme Court on a question of law,

or must have confronted facts that are "materially indistinguishable from a relevant Supreme

Court" case but nevertheless arrived at the opposite result. *Williams (Terry)*, 529 U.S. at 405; *see*

*Barnes v. Joyner*, 751 F.3d 229, 238 (4th Cir. 2014); *Lovitt v. True*, 403 F.3d 171, 178 (4th Cir.

2005). However, a federal habeas court "'may not issue the writ simply because that court

concludes in its independent judgment that the relevant state-court decision applied established

federal law erroneously or incorrectly.'" *Lovitt*, 403 F.3d at 178 (quoting *Williams (Terry)*, 529

U.S. at 411).

Rather, the state court's application of federal law "must also be unreasonable." *Lovitt*,

403 F.3d at 178; *see Nicolas*, 820 F.3d at 129 (The court "cannot disturb the State court's ruling

simply because it is incorrect; it must also be unreasonable."); *Barnes*, 751 F.3d at 238-39 (a state court's decision is an unreasonable application of clearly established federal law when the state court identifies the correct governing principle but unreasonably applies that principle to the facts). Under § 2254(d)(1), to be "unreasonable," the state court's application of that law must be "objectively unreasonable," not merely incorrect. *Owens v. Stirling*, 967 F.3d 396, 411 (4th Cir. 2020); *see Woodall*, 572 U.S. at 419; *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003). To warrant that description, a state court must have committed "an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.

Section 2254(d)(2) of 28 U.S.C. requires a prisoner to show that the state court proceedings "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See Crockett*, 35 F.4th at 241. Factual determinations are unreasonable when they are "'sufficiently against the weight of the evidence . . . .'" *Williams v. Stirling*, 914 F.3d 302, 312 (4th Cir. 2019) (citation omitted). In other words, the "federal court must conclude not only that the state court's determination was wrong, but that it was *unreasonable* in light of the evidence presented, that is, it is not 'debatable among jurists of reason.'" *Merzbacher v. Shearin*, 706 F.3d 356, 368 (4th Cir. 2013) (emphasis in original) (internal citation omitted).

However, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Burt*, 571 U.S. at 18 (citation omitted); *see Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id.* This standard is "meant to be" one that is "difficult to meet…" *Harrington*, 562 U.S. at 102.

Of relevance, the habeas court "must presume that the state court's factual findings are correct unless the petitioner rebuts those facts by clear and convincing evidence." *Nicolas*, 820 F.3d at 129; *see Harrington*, 562 U.S. at 100-01; *Walters*, 18 F.4th at 442; 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell,* 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where the state court has "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.*

Brwon faces an additional hurdle if he alleges a trial court error that the State court subjected to harmless error review. Under these circumstances, a federal court cannot grant habeas relief without applying both the test outlined in *Brecht v. Abrahamson*, 507 U.S. 619 (1993), and the deferential review required by AEDPA. *Brown*, 596 U.S. 118.

*Brecht* requires a state prisoner seeking to challenge his conviction in collateral federal proceedings to show that the error had a "'substantial and injurious effect or influence'" on the outcome of his trial. *Brecht*, 507 U.S. at 637 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). A "'substantial and injurious effect or influence'" requires "actual prejudice." *Brecht*, 507 U.S. at 637. "[A] federal court must *deny* relief to a state habeas petitioner who fails to satisfy either [*Brecht*] or AEDPA. But to *grant* relief, a court must find that the petitioner has cleared both tests." *Brown*, 596 U.S. at 134 (emphasis in *Brown*).

In sum, for Petitioner to succeed on any of his claims of error he must convince this federal habeas court that there is "'grave doubt'" about "whether the [alleged] trial error affected the verdict's outcome." *Id.* at 135-36. Brown must also demonstrate that every "fairminded jurist

would agree that an error was prejudicial." *Id.* at 136.  As discussed below, these standards foreclose Brown's claims.

As discussed in detail below, these standards foreclose Brown's claims.

### III.   Procedural Default

Procedural default occurs when a habeas petitioner fails to present the claim to the highest state court with jurisdiction to hear it, and the state courts would now find that the petitioner cannot assert that claim.  *Mickens v. Taylor*, 240 F.3d 348, 356 (4th Cir. 2001); *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998).  A procedural default also may occur where a state court declines "to consider the merits [of a claim] on the basis of an adequate and independent state procedural rule." *Yeatts v. Angelone*, 166 F.3d 255, 260 (4th Cir. 1999); *see also Gray v. Zook*, 806 F.3d 783, 798 (4th Cir. 2015) ("When a petitioner fails to comply with state procedural rules and a state court dismisses a claim on those grounds, the claim is procedurally defaulted.").  As the Fourth Circuit has explained, "if a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Breard*, 134 F.3d at 619 (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)).

For a person convicted of a criminal offense in Maryland, exhaustion may be accomplished either on direct appeal or in post-conviction proceedings.  To exhaust a claim on direct appeal in non-capital cases, a defendant must assert the claim in an appeal to the Appellate Court of Maryland and then to the Supreme Court of Maryland by way of a petition for writ of certiorari. *See* Md. Code (2020 Repl. Vol., 2024 Supp.), §§ 12-201, 12-301 of the Courts and Judicial Proceedings Article ("C.J.").  To exhaust a claim through post-conviction proceedings, a defendant must assert the claim in a petition filed in the circuit court in which the inmate was convicted, due

within ten years of the date of sentencing.  *See* Md. Code (2018 Repl. Vol., 2024 Supp.), §§ 7-101–7-103 of the Criminal Procedure Article ("C.P.").  After a decision on a post-conviction petition, further review is available through an application for leave to appeal filed with the Appellate Court of Maryland.  *Id.* § 7-109.  If the Appellate Court of Maryland denies the application, there is no further review available, and the claim is exhausted.  C.J. § 12-202.

As noted, procedural default occurs when a habeas petitioner fails to exhaust such available state remedies and "'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Breard*, 134 F.3d at 619 (quoting *Coleman*, 501 U.S. at 735 n.1).  Maryland law does not permit a second and successive state petition for post-conviction relief.  *See* C.P. § 7-103(a).

Respondents argue that Ground Two, which was asserted in Brown's post-conviction petition, is procedurally defaulted because he failed to include it in his application for leave to appeal to the CSA. I agree. The record confirms that Brown asserted three distinct claims in his application for leave to appeal, but Ground Two was not among them. *See Pevia v. Bishop*, ELH-16-1223, 2019 WL 3412649, at *13 (D. Md. July 26, 2019) ("The unexhausted claims are procedurally defaulted, as [Petitioner] failed to present them in his application for leave to appeal and the state courts would now find that he cannot assert those claims.")

If a procedural default has occurred, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits; or (2) that the failure to consider the claim on the merits would result in a miscarriage of justice, specifically, the conviction of one

who is actually innocent.  *See Murray v. Carrier*, 477 U.S. 478, 495-96 (1986); *Breard*, 134 F.3d at 620.

"Cause" consists of "'some objective factor external to the defense [that] impeded counsel's efforts' to raise the claim in state court at the appropriate time." *Breard*, 134 F.3d at 620 (quoting *Murray*, 477 U.S. at 488).  To demonstrate prejudice, the petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982); *see Murray*, 477 U.S. at 494.

Under the second exception, a petitioner may obtain review of procedurally defaulted claims if the case "falls within the 'narrow class of cases . . . implicating a fundamental miscarriage of justice.'" *Schlup v. Delo*, 513 U.S. 298, 314-15 (1995) (quoting *McCleskey v. Zant*, 499 U.S. 467, 494 (1991)).  Such cases are generally limited to those for which the petitioner can show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496.

Neither exception to the procedural default bar applies here. The Court ordered Brown to respond to Respondents' procedural default arguments and provide the Court with any available excuses. ECF 14. Brown responded, but his Reply merely disputes that Ground Two is procedurally defaulted and reargues the merits of his claims. ECF 15. In any event, as discussed below, even if Ground Two were not procedurally defaulted, it is subject to dismissal for lack of merit.

## IV.    Discussion

Brown's three habeas claims are premised on ineffective assistance of trial counsel. The Sixth Amendment to the Constitution guarantees a criminal defendant the right to effective

assistance of competent counsel.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see also Buck v. Davis*, 580 U.S. 100, 118 (2017); *United Staters v. Ductan*, 800 F.3d 642, 648 (4th Cir. 2015).  To mount a successful challenge based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-pronged test set forth in *Strickland*, 466 U.S. at 687-88; *see Williams (Terry)*, 529 U.S. at 390; *United States v. Sutherland*, 103 F.4th 200, 207-08 (4th Cir. 2024); *United States v. Winbush*, 922 F.3d 227, 229 (4th Cir. 2019); *United States v. Hall*, 771 F. App'x 226, 227 (4th Cir. 2019) (per curiam); *United States v. Carthorne*, 878 F.3d 458, 465 (4th Cir. 2017); *United States v. Powell*, 850 F.3d 145, 149 (4th Cir. 2017).

First, the petitioner must show that counsel's performance was deficient.  Second, the petitioner must show that he was prejudiced by the deficient performance.  *Strickland*, 466 U.S. at 687; *see Buck*, 580 U.S. at 118; *Chaidez v. United States*, 568 U.S. 342, 348 (2013); *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985); *Winbush*, 922 F.3d at 229.  The petitioner must prove his claim by a preponderance of the evidence.  *United States v. Mayhew*, 995 F.3d 171, 176 (4th Cir. 2021) (4th Cir. 2021; *United States v. Pettiford*, 612 F.3d 270, 277 (2010).

With regard to the first prong, the petitioner must demonstrate that his attorney's performance fell "below an objective standard of reasonableness," as measured by "prevailing professional norms."  *Strickland,* 466 U.S. at 688; *see Harrington*, 562 U.S. at 104; *Sutherland*, 103 F.4th at 207–08; *United States v. Richardson*, 820 F. App'x 225, 225 (4th Cir. 2020); *Powell*, 850 F.3d at 149; *Hall*, 771 F. App'x at 227.  The central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom."  *Harrington*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 690).

The Supreme Court has reiterated that the "first prong sets a high bar." *Buck*, 580 U.S. at 118. Notably, a "lawyer has discharged his constitutional responsibility so long as his decisions fall within the 'wide range of professionally competent assistance.'" *Id.* (citation omitted). The standard for assessing such competence is "highly deferential" and has a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 669. Judicial scrutiny of counsel's performance must be "'highly deferential'" and not based on hindsight. *Stokes v. Stirling*, 10 F.4th 236, 246 (4th Cir. 2021) (citing *Strickland*, 466 U.S. at 689).

To satisfy the high bar, the burden is on the petitioner to establish "'that counsel made errors so serious that his "counsel" was not functioning as the "counsel" guaranteed by the Sixth Amendment.'" *Harrington*, 562 U.S. at 88 (quoting *Strickland*, 466 U.S. at 687). Notably, "the *Strickland* standard must be applied with scrupulous care," because "the standard of judging counsel's representation is a most deferential one." *Harrington*, 562 U.S. at 105; *see United States v. Morris*, 917 F.3d 818, 823 (4th Cir. 2019). Indeed, "[k]eenly aware of the difficulties inherent in evaluating counsel's performance, the Supreme Court has admonished that courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Lawrence v. Branker*, 517 F.3d 700, 708 (4th Cir. 2008) (quoting *Strickland*, 466 U.S. at 689); *see Cullen v. Pinholster*, 563 U.S. 170, 189 (2011); *Harrington*, 562 U.S. at 104; *Richardson*, 820 F. App'x at 225-26; *Lee v. Clarke*, 781 F.3d 114, 122 (4th Cir. 2015). Therefore, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689.

Second, the petitioner must show that his attorney's deficient performance "prejudiced [his] defense." *Strickland*, 466 U.S. at 687. To satisfy the "prejudice prong," a petitioner must

show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also Buck*, 580 U.S. at 119. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Strickland*, 466 U.S. at 687; *see Thornell v. Jones*, 602 U.S. 154, 155 (2024) (death penalty case).

A strong presumption of adequacy attaches to counsel's conduct such that a petitioner alleging ineffective assistance of counsel must show that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors. *Strickland*, 466 U.S. at 696. Thus, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. A petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

In evaluating whether the petitioner has satisfied the two-pronged test set forth in *Strickland*, a court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697. Nor must a court address both components if one is dispositive. *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015). This is because failure to satisfy either prong is fatal to a petitioner's claim. As a result, "there is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

### A. Ground One

In Ground One, Brown contends that his trial counsel was ineffective for failing to request a jury instruction on the "castle doctrine." ECF 1 at 5. Brown raised the same claim in his post-conviction petition, where he argued that "[t]he castle doctrine permits a person who is without fault and is attacked within his dwelling or its curtilage to stand his ground and defend himself, even if a retreat could be safely accomplished," and he was prejudiced by the absence of a corresponding jury instruction that "properly informed [the jury] that Mr. Brown did not have a duty to retreat, but rather a right to defend himself and his family exactly as he did, and that he acted reasonably in light of that right." ECF 12-1 at 135, 153. To prove this allegation, Brown called his trial counsel, Jason Silverstein, to testify at the post-conviction hearing. ECF 12-9 at 9-40. Silverstein testified that he was aware of the castle doctrine but did not believe that the evidence supported a jury instruction because Brown shot the victim in the back. *Id.* at 12-13. Silverstein testified that his strategy was to focus on "defense of others." *Id.*

The circuit court denied the claim. In an opinion dated November 15, 2021, the circuit court engaged in a lengthy discussion of Maryland's implementation of the castle doctrine and concluded that the jury was properly instructed. The circuit court also deferred to trial counsel's strategic decision to focus on self-defense and defense of others. ECF 12-1 at 202-209.

Brown argues that Maryland law entitled him to a jury instruction on the castle doctrine and his trial counsel was ineffective for failing to request one. ECF 13. However, the circuit court concluded that trial counsel's performance was not deficient because Maryland law did not require a jury instruction on the castle doctrine. ECF 12-1 at 202-209. This Court is bound to defer to that conclusion. *See Sharpe v. Bell*, 593 F.3d 372, 383 (4th Cir. 2010) ("It is beyond the mandate of federal habeas courts, however, to correct the interpretation by state courts of a state's own laws.").

Notably, Brown cannot show that he was prejudiced by the omission of a specific castle doctrine jury instruction, because the jury was, in fact, instructed that Brown had no duty to retreat in his home.  The trial court told the jury, ECF 12-6 at 93-94 (emphasis added):

> This limit on the Defendant's use of deadly force requires the Defendant to make a reasonable effort to retreat. **The Defendant does not have to retreat if the Defendant was in his home**, if retreat was unsafe, or if the avenue of retreat was unknown to the Defendant, or if the Defendant was being robbed, or the Defendant was lawfully arresting the victim.

Nevertheless, Brown argues that a special castle doctrine instruction would have been more expansive because it would have included the "immediate area surrounding the dwelling." ECF 13 at 9-10. But, even if a special castle doctrine instruction had been given, the jury would have still been instructed on the distinction between complete and partial self-defense. The jury instructions directed, ECF 12-6 at 94:

> If the Defendant actually believed that he was in immediate or imminent danger of death or serious bodily harm even though a reasonable person would not have so believed, the Defendant's actual though unreasonable belief -- or unreasonable belief is a partial self-defense and the verdict should be guilty of voluntary manslaughter rather than murder. If the Defendant used greater force than a reasonable person would have used but the Defendant actually believed that the force used was necessary, the Defendant's actual though unreasonable belief is a partial self-defense and the verdict should be voluntary manslaughter rather than murder.

The jury determined that Brown acted unreasonably under the circumstances when it found him guilty of voluntary manslaughter.  The jury either made a conclusion that Brown was unreasonable in his belief that he was in immediate danger of harm or he used greater force than was necessary, or both. Neither of these conclusions would have been disturbed by a special castle doctrine instruction and the outcome of Brown's trial would have been the same.

The Court is bound to defer to both trial counsel's strategic decisions and the circuit's court's conclusion that his performance did not fall below prevailing professional norms. Brown

has failed to demonstrate that the circuit court's denial of Ground One was contrary to or an unreasonable application of *Strickland*. Ground One lacks merit.

### B. Ground Two

In Ground Two, Brown contends that his trial counsel was ineffective for failing to object when the State amended the indictment at the outset of his trial. ECF 1 at 5. Even if Ground Two were not procedurally defaulted, it is without merit.

Shortly before opening statements, the prosecutor asked the trial court to address the matter of the State's motion to amend the indictment the prosecutor said was filed "months ago." ECF 12-3 at 8.[5] The State asked to change the name of the victim on the charge of reckless endangerment to Brown's daughter, C.B. *Id.* Brown's counsel advised that he was under the impression that the motion had already been ruled on and that he had no objection. *Id.* at 9. The trial court amended the indictment, as requested. *Id.* at 10.

Both times Brown's trial counsel moved for acquittal at trial he argued that the State only charged C.B. in connection with the reckless endangerment charge to "inflame the jury." ECF 12-5 at 112-113, 12-6 at 65-66. But, at the post-conviction hearing, Brown's trial counsel testified that he was not arguing that the indictment was improperly amended. Rather, he was arguing that the State had not made its case on the reckless endangerment charge. ECF 12-9 at 28-29. Trial counsel testified that he believed the case was properly indicted. *Id.* at 29.

Indeed, in Brown's briefing to the circuit court on this issue he cites no authority in Maryland law that would support a conclusion that the amendment was improper or an objection to the indictment would have been sustained. ECF 12-1 at 186-187. Brown's briefing to this Court lacks the same authority. *See* ECF 1, 13, 15.

---

[5] To my knowledge, the State Record does not include a copy of this motion.

Brown cannot establish either prong of the *Strickland* analysis for ineffective assistance of counsel. Ground Two lacks merit.

## C. Ground Three

In Ground Three, Brown contends that his counsel was ineffective for failing to object to the jury instruction on reckless endangerment. ECF 13 at 15-16. Specifically, Brown argues that the instruction should have included language on self-defense. *Id.*

Brown asserted Ground Three in his post-conviction petition. ECF 12-1 at 165-171. Brown's trial counsel testified at the post-conviction hearing that he did not object to the instruction because he thought it was appropriate. ECF 12-9 at 19. The circuit court denied Ground Three, concluding: "Trial counsel cannot be found ineffective for not objecting to what he understood, based on his legal experience, to be a proper instruction. Therefore, this court need not go any further into its analysis, petitioner's argument fails." (*Id.* at 211).

The circuit court dismissed Ground Three on *Strickland's* performance prong. This Court independently concludes that Brown cannot establish that he was prejudiced by his counsel's failure to object to the reckless endangerment jury instruction. *Rompilla v. Beard*, 545 U.S. 374, 390 (2005) ("Because the state courts found the representation adequate, they never reached the issue of prejudice…and so we examine this element of the *Strickland* claim *de novo.*") (citing *Wiggins v. Smith,* 539 U.S. 510, 534 (2003)).

Brown's jury rejected complete self-defense when it convicted him of voluntary manslaughter. ECF 12-6 at 94. He would not have received a partial self-defense instruction for reckless endangerment. *See Jones v. State*, 357 Md. 408, 422–23 (2000) (citations omitted) ("The doctrine of imperfect self-defense applies only to "criminal homicide and its shadow forms, such as attempted murder. It has no applicability to other assaultive crimes").

Brown has failed to show that the State court's adjudication of Ground Three was contrary to or an unreasonable application of *Strickland*. Ground Three is without merit.

## V.  Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases provides that the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Because the accompanying Order is a final order adverse to the applicant, 28 U.S.C. § 2253(c)(1) requires issuance of a certificate of appealability before an appeal can proceed.

A certificate of appealability ("COA") may issue if the prisoner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Buck*, 580 U.S. at 115. When a district court rejects a constitutional claim on the merits, a petitioner may satisfy the standard by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  When a petition is denied on procedural grounds, the petitioner may meet the standard by showing that reasonable jurists "would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and "whether the district court was correct in its procedural ruling."  *Id.*

Brown has failed to satisfy this standard on any of his claims.  Therefore, a certificate of appealability shall not issue.[6]

---

[6] The denial of a COA by the district court does not preclude the Petitioner from seeking a COA from the Fourth Circuit.

## VI.     Conclusion

For the foregoing reasons, I shall deny Brown's Petition for writ of habeas corpus.  And, I decline to issue a COA.

A separate Order follows.


<u>April 8, 2025</u>                                                  <u>        /s/                        </u>
Date                                                  Ellen L. Hollander
                                                  United States District Judge